UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Todd Karlen,

        Plaintiff,

v.                                                              Civil No. 12-1102 (JNE/JJG)
                                                                  ORDER

Jones Lang LaSalle America's, Inc.,

        Defendant.

Plaintiff Todd Karlen ("Karlen") brought this suit against his former employer, Jones Lang LaSalle America's, Inc. ("JLLA"), alleging nonpayment of commissions and bonuses, as well as failure to reimburse him for work-related expenses. He asserted claims under Minnesota Statutes § 181.03 and § 181.13, as well as under theories of breach of contract, unjust enrichment and promissory estoppel. JLLA moved for summary judgment. On May 23, 2013, the Court granted JLLA's motion with respect to Karlen's claims for nonpayment of a 2011 bonus, nonpayment of commissions allegedly owed for leasing revenue resulting from a lease executed with H&M, nonpayment of commissions allegedly owed for the leasing of basement space to Primebar, and JLLA's failure to reimburse Karlen for various work-related expenses. Karlen waived his unjust enrichment and promissory estoppel claims. The Court granted summary judgment in favor of Karlen on Karlen's claim that JLLA failed to pay him commissions related to Primebar's lease of first-floor space. Judgment was entered on May 24, 2013, ordering JLLA to pay Karlen $72,503.54, representing commissions owed and applicable statutory damages under Minnesota Statutes §§ 181.03 and 181.13.[1] The Court ordered Karlen's attorney to submit a bill of costs representing the costs and fees associated with Karlen's one successful claim. On

---

[1] Of this amount, $34,521 represented the commission payments JLLA owed to Karlen. This amount was doubled pursuant to Minnesota Statutes § 181.03, and a penalty of $3,461.54 was imposed pursuant to Minnesota Statutes § 181.13(a).

June 6, 2013, Karlen moved under Federal Rule of Civil Procedure 54(d) for an order awarding attorneys' fees and costs under Minnesota Statutes § 181.171, subdiv. 3. JLLA opposed portions of Karlen's motion, and the Court permitted Karlen to reply to JLLA's objections. Karlen filed his Reply Memorandum on July 5, 2013.

Karlen seeks costs in the amount of $2,018.22 and attorneys' fees of $48,548.31.[2] Under Minnesota Statutes § 181.171, subdiv. 3, "the court shall order an employer who is found to have committed a violation to pay the aggrieved party reasonable costs, disbursements, witness fees, and attorney fees." "[T]he district court has discretion in determining the amount of a fee award," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), and in determining the fee amount that is reasonable, the Court must make findings or otherwise "concisely explain why it felt the hours claimed are reasonable or unreasonable," *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 622 (Minn. 2008).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This calculation, however, "does not end the inquiry." *Id.* at 434. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* These considerations include "the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client." *Milner*, 748 N.W.2d at 621; *see also Hensley*, 461 U.S. at 430 n.3 (listing factors to consider in determining the reasonableness of a fee award). "Minnesota courts

---

[2] JLLA does not object to the lodestar amount of $350 per hour, nor does JLLA dispute the costs of $2,018.22 or the fees related to Plaintiff's initial flat fee.

consider the results obtained critical to the award." *Milner*, 748 N.W.2d at 622 (internal quotation marks omitted). This factor "is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of the claims for relief." *Id.* (internal quotation marks omitted). The Court may also consider "the significance of the legal issues on which the plaintiff prevailed" and the "the overall relief obtained." *Id.* at 623; *see also Holt v. Swenson*, 90 N.W.2d 724, 729 (Minn. 1958) (stating that factors to include in determining the reasonableness of attorney's fees are "the amount involved," the "time necessary," and "the difficulties of the propositions involved," among other things).

The Court has reviewed the parties' submissions and acknowledges that both parties have attempted to calculate the number of hours reasonably spent litigating the one successful claim asserted in this lawsuit. But as explained above, such a calculation is only a starting point. Other factors should be considered that may result in an upward or downward adjustment of the calculated fee. In light of those factors, the Court concludes that the requested attorneys' fees of $48,548.31 must be reduced. Karlen achieved only narrow success in his lawsuit, prevailing on only one part of one of his claims; JLLA prevailed on the vast majority of the claims. Karlen asserted claims related to: commissions for the lease of approximately 17,000 square feet to H&M; commissions for the lease of approximately 10,000 square feet to Primebar (only approximately sixty percent of which was related to the first-floor lease); a bonus payment of nearly $20,000; and expenses of $134.83. JLLA prevailed on all but the portion of Karlen's claim related to the first-floor space leased to Primebar. Ultimately, it was found that JLLA owed Karlen $34,521 in unpaid commissions for Primebar's lease of that space. When considering the number of claims asserted and the amount of money Karlen sought, Karlen's success and the relief he obtained in this lawsuit were very limited.

The purpose of fee-shifting statutes is to encourage the prosecution of meritorious claims. *See Perdue v. Kenney A. ex rel. Winn*, 599 U.S. 542, 130 S. Ct. 1662, 1672 (2010) ("[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case."); *Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers*, 26 F.3d 842, 851 (8th Cir. 1994) (explaining that in civil rights cases, the "twin policies promoted by fee-shifting" are "[t]o encourage the vigorous enforcement of federal rights without encouraging frivolous, unreasonable, or groundless litigation"). At the time Karlen brought his lawsuit in April 2012, *none* of his claims were meritorious. JLLA asserted—and Karlen did not dispute—that Karlen was only entitled to the first half of his earned commissions when a lease was executed and JLLA had received payment from the property owner; Karlen was entitled to the second half when the tenant opened in the leased space and JLLA had received payment from the property owner. When Karlen commenced this lawsuit, he was not yet entitled to either of those payments, which were subsequently delivered in June and October 2012, when the above payment conditions were met. Thus, at the time Karlen brought suit, his claim that he was entitled to these payments was factually and legally unsupported.

JLLA sent Karlen three checks representing the commissions Karlen earned for the Primebar lease, largely in accordance with JLLA's policy for the payment of such commissions.[3] Had JLLA simply issued the checks to Karlen, without the involvement of any of the lawyers, JLLA would likely have been entirely successful in defeating all of Karlen's claims. It was only because of the communications between the attorneys after the checks had been issued that

---

[3] The checks were dated May 4, 2012; June 1, 2012; and October 5, 2012. The record before the Court on summary judgment revealed that the June and October checks were issued in accordance with JLLA's policy for payments of commissions; the May check was issued prematurely due to a mistake by JLLA's legal department. There was no evidence that any of the payments to Karlen were delayed.

Karlen had any successful claims at all in this lawsuit.[4]  In effect, the attorneys representing both parties needlessly increased the cost of resolving this dispute.  As Karlen's counsel points out, fee awards "are critical in preserving access to the courts for working people who are victims of employment-related statutory violations."  Pl.'s Mem. Supp. 8 (ECF No. 41).  Here, however, Karlen was *not* a victim of an employment-related statutory violation at the time he commenced this action.  Had he not prematurely brought a lawsuit and had the lawyers not already been involved when JLLA issued the checks, it is likely that there would have never been any statutory violations at all.

Consideration of the time, labor and skill required for the prosecution of Karlen's successful claim also supports a reduction of the requested fee.  Karlen prevailed only on his claim that JLLA failed to pay him the commissions he had earned for the first-floor lease to Primebar.  JLLA never disputed that Karlen earned commissions for this space, nor did the parties appear to dispute the amount of these commissions.  The parties also did not dispute that JLLA had, in fact, issued checks to Karlen that represented payment of these commissions.  The only question with respect to these commission payments was whether or not JLLA had imposed conditions on Karlen's use of the checks that JLLA issued to him after he brought suit.  The facts relevant to this issue were confined to the email communications between the attorneys in which they discussed the legal implications of cashing the checks.  At summary judgment, Karlen asserted that JLLA's attorney had indicated that his cashing of the checks would result in a

---

[4]  As made clear by the parties' submissions in connection with the current fee petition, after Karlen received the checks from JLLA, his attorney inquired as to whether the cashing of those checks constituted any sort of legal waiver of claims.  This inquiry spurred a series of communications between the attorneys, resulting in JLLA's imposition of conditions on the cashing of the checks.  It was only because of these conditions and communications, which occurred *after* Karlen brought suit, that Karlen succeeded at all in this litigation.

waiver of some of his claims in his lawsuit, and JLLA did not dispute this assertion.[5] The Court ultimately found that the conditions—however reasonable JLLA might have considered them to be—altered the method or procedures for payment and thus constituted a violation of the applicable Minnesota statutes. *See* Minn. Stat. § 181.03. Once the Court found that JLLA had failed to pay the commissions owed to Karlen, JLLA did not dispute the application of the relevant Minnesota statutes or the computation of statutory penalties. Overall, the underlying facts related to Karlen's successful claim were largely undisputed, and the only relevant issue was one of law. Further, that one legal issue was not particularly significant or complex. Successful prosecution of this claim did not necessitate significant amounts of time, discovery, research or legal skill.

In consideration of the factors discussed above, including the degree of success, the overall relief obtained, the significance of the legal issue on which Karlen prevailed, and time necessary to pursue the successful claim, the Court finds that attorneys' fees of $20,000 are reasonable in this case. *See Milner*, 748 N.W.2d at 624 ("The district court may 'identify specific hours that should be eliminated' or the district court 'may simply reduce the award to account for the limited success.'" (citation omitted)); *Hensley*, 461 U.S. at 440 ("[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.").

In addition to attorneys' fees and costs, Karlen also requests in his memorandum an award of prejudgment interest. His June 6, 2013 motion, however, seeks only an order for attorneys' fees and costs. The motion itself makes no reference to prejudgment interest, nor does

---

[5] JLLA appears now to dispute that it had imposed conditions on Karlen's use of the checks, but JLLA made no such argument in its summary judgment briefs—JLLA instead asserted that it had issued the checks and that Karlen's reason for not cashing those checks was irrelevant. *See* Def.'s Reply Br. 11 (ECF No. 30).

Karlen ask the Court to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).  On June 24, 2013, JLLA filed a notice of appeal.  Because there is nothing in the current motion that would allow the Court to construe it as a Rule 59(e) motion and a notice of appeal has already been filed, this Court is now without jurisdiction to alter or amend the judgment so as to award prejudgment interest.  *See* Fed. R. App. P. 4(a)(4).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff's Motion for Attorneys' Fees and Costs [Docket No. 40] is GRANTED IN PART and DENIED IN PART.

2. Plaintiff's request for attorneys' fees is GRANTED in the amount of $20,000.

3. Plaintiff's request for costs is GRANTED in the amount of $2,018.22.

Dated: July 17, 2013

                                                  s/Joan N. Ericksen
                                                  JOAN N. ERICKSEN
                                                  United States District Judge